IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **SHARANDA L. TERRY** | ) | |
| | ) | |
| Defendant, Pro Se | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 2:16-cv-01021-JHE |
| | ) | |
| **AXIS INSURANCE COMPANY** | ) | |
| | ) | |
| Plaintiff, | ) | |

---

## MOTION FOR SUMMARY JUDGMENT

---

Comes now is the Defendant/Pro Se, Sharanda L. Terry,  to submit a **MOTION FOR SUMMARY JUDGMENT: claims pursuant to Federal Rule of Civil Procedure 56(c).**

**I Shararda L. Terry,** has been acting as my own attorney **"Pro Se"** since the very beginning of this litigation/complaint the Plaintiff with the help of the Counsel brought froth against me. Throughout my own findings within the Plaintiffs Claims, Counts and Declaratory Judgment, I've uncovered a lot of inconsistent, misleading and untrue  statements, the Plaintiff along with their Counsel have used or has tried to used to gain a win in this case no matter how big or small, relevant or irrelevant

actions or untrue statement to destroy my Character along with any of my potential witnesses I want to used if this case sees a trail date to defend myself.

First I want to start from the very beginning of the **Plaintiff's** filed 06/23/2016 Document #1 **COMPLAINT FOR DECLARATORY JUDGMENT/ Along with their individual Four Counts against me.**

Starting with the **FACTS** part of their **COMPLAINT**

In their **Paragraph 5** the Plaintiff makes it seems as if I personally requested the $91,000 Dwelling and $36,000 Homeowners Insurance., and throughout this litigation they tried to stick with that story until I brought up the Actual Cash Value Insurance Policy (ACV) in which I personally requested and signed for, not the upgraded Replacement Cash Value Insurance Policy (RCV) in which **Plaintiff's** offered to me due to some type of error on their end that had nothing to with me.

In neither of their Paragraph 5 or 9 the Plaintiff never mentioned the Actual Cash Value Policy no., or face value of that policy that I personally requested. But later throughout the this litigation the Plaintiff's admits the (RCV) policy was their own offerings to the Deafendant.

In their **Paragraph 12** the plaintiff mentioned a red, plastic five gallon gas can, in which the Defendant brother Sherard Terry has admitted the gas can belongs to him because he used it to store gasoline for a gas generator in which the laborers was using while renovation were being done on the Defendants property prior to the time of her home incident.

But not once did the Plaintiff mentioned in their Paragraph 12 or 13 the lighter fluid bottles that were found throughout the defendant's insured property that can

be seen in stated in both **investigation reports** in which the Plaintiff's speaks about in **paragraph 12 and 13.**

As far as their **Paragraph 14**: Defendant still stands by her statement before she left her home before/surrounding the time of her home incident all of the Contents/Personal Property was there and when she returned to the home after the incident she noticed Contents/Items/Personal Property was either damaged or missing due to her home incident.

As far as their **Paragraph 15-17** I agree all is true.,

But in their **Paragraph 18** it's somewhat misleading because they themselves nor I really knows when and what was the correct date or time the home incident happened. So for them to say *"Sherard Terry was present at the house on the date of the fire"* was very misleading I say again, because Sherard left the home between the hours of 5 - 7 pm the evening of **January 27, 2016** and was present at the Defendants home of the said date of incident **January 28, 2016** after the Defendants home incident because once he gotten a frantic knock on his door at his home door from his little sister following a phone call with the Defendant, saying go to the Defendants home there has been a fire in which him and Natasha Terry arrived at the Defendants burning property between the hours of 1:00 and 2:00 am that mooring.

Also another misleading and untrue statement made by the Plaintiff is their **Paragraph 19:** that is 100% falsified because the Defendant never stated to the plaintiff or to any of their representatives, that she was purchasing a new home for $77,000.

In their **Paragraph 20:** the plaintiff tries their best to destroy the Defendant's credibility by stating she wasn't fully cooperative, her information consists of **evasion, inconsistencies, misrepresentation, and implausible, non-credible statements regarding her claim of loss.**

But the truth is, in the beginning of the Defendants filed claimed with the Plaintiff and representatives throughout this litigation process the Plaintiff's themselves along with the their representatives, expert witnesses and third party's information they've **shared** and **given** within their circle, the Courts and also the Defendant have consists of **evasion, inconsistencies, misrepresentation, and implausible, non-credible statements regarding her claim of loss,** not to mention the **unethical behavior** from the Plaintiff's hired law firm (Spain & Gillon) various employees., and as far as the lettered (a)-(f) with regards of (e) The **fact** is the Defendant left her home over an hour before she received a phone call from her neighbor, that her home was on fire and as for (f) the Defendants honestly felt that certain third persons was irrelevant to this case and her claim to mention because they had no knowledgeable information or material on what or who were involved in her home incident.

In their **Paragraph 21:** was based on a non party (Sherard L. Terry) to this claim about his personal feelings based upon what he's seen and heard at that time when he wrote those letter to the plaintiff and others acting on their behalf.

In the 21st Paragraph it starts of misleading and making an untrue statement, stating *"Axis has attempted to obtained a statement from Terry's Brother Sherard Terry".* Throughout this litigation they tried to hold on to that untrue statement, with the Plaintiff and the Law firm of Spain & Gillon having knowledge of Sherard Terry's close to 15min. conversation/Giving Statements to an AXIS INVESTIGATOR BY THE NAME OF JEFF STARNES OF G4s Compliance and

Investigation on Monday May 23, 2016 on which Jeff Starnes called Mr. Terry on that Friday May 20, 2016 wanting to come to town to talk with him but Sherard was on his way out of town. Mr. Starnes called Sherard on both of those dates, Sherard missed both of Mr. Starnes receiving calls but returned both, that being said some things and accusations were made up about Sherard by the plaintiff's and their Counsel according to Mr. Starnes in which he was stating to Sherard in that May 23, 2016 phone conversation that Mr. Starnes claimed he was recording to give to the insurance company. But Mr. Starnes never offered that recording of Sherard Terry as he's not produce others ones like the **Neighbors, Police, or The Fire Department.**

**Again** Sherard Terry was acting independently on his own, he did not speak for the Defendants in this claim or case within the letters the Plaintiff labeled **Exhibit C and D.**, the letters were only used in their Declaratory Judgment Complaint to judge the the Terry's as some type of outcasts and misfits., when really they started with Sherard first and they didn't like his responses. As far as **Paragraph 22:** Again they started with Sherard., and reacted again.

As far as **Paragraph 23-26:** are the Plaintiff's theories with no factual evidence or factual knowledge.

As far as **Paragraph 27:** are the Plaintiff's theories with no factual evidence or factual knowledge. But in the Defendants defense she never knew that gas can belong to her brother Sherard Terry until a the reading of the Plaintiff's filed Document #1.

As far as **Paragraph 28-36:** are the Plaintiff's theories once again with no factual evidence or factual knowledge.

Now sarting with the total of **4 <u>COUNTS</u>** part of their **COMPLAINT**

In the Plaintiff's **<u>COUNT ONE - BREACH OF CONTRACT AND VIOLATION OF ALA. CODE 27-14-28:</u>** As far as **Paragraph 37-39:** are the Plaintiff's theories with no factual evidence or factual knowledge.

In the Plaintiff's **<u>COUNT TWO – COVERAGE EXCLUDED FOR LOSSES INTENTIONALLY CAUSED BY INSURED:</u>** As far as **Paragraph 39-41:** are the Plaintiff's theories with no factual evidence or factual knowledge.

In the Plaintiff's **<u>COUNT THREE - BREACH OF CONTRACT CONCEALMENT OR FRAUD PROVISION :</u>** As far as **Paragraph 42 and 43:** are the Plaintiff's theories with no factual evidence or factual knowledge.

In the Plaintiff's **<u>COUNT FOUR - DISPUTED CLAIM VALUE:</u>** As far as **Paragraph 44 and 46:** The Plaintiff didn't show no claim of evidence on what their value to the claim should be in regarding both the **Dwelling** and **Personal Property/Contents.**

## <u>FACTUAL BACKGROUND ABOUT THIS CLAIM AND CASE</u>

The Defendant, Sharanda L. Terry in fact did file a claim to the Plaintiff's or their representatives on January 28, 2016. In which she stated to them her home was set on fire and burglarized sometime around midnight the date of January 28, 2016.

From the beginning of this claim the Claimant/Defendant was doomed from the start, with the **untrue statement** made within the **January 28, 2016** Birmingham Police and Fire Departments reports., following with the Plaintiff's and their (Four) Third Party Administrators/Claims Investigators/Representatives (a) TIM PARKMAN INC;, (b) McDonald Claim Services (c) G4s Compliance and Investigations (f) Rimkus Consultant Group as seen as "**Exhibits**" later throughout this document, along with the help of their hired Law Firm (g) (Spain and Gillon) selected employees of whom the Defendant has been kick around from group to group, so the can come up with some type of case against her no matter how non-factual or untrue the statements, accusations, allegations were/is against the defendant and others.

Throughout this litigation the Defendant herself was also fighting to get her named cleared from a bogus and frivolous fire investigation report that the Plaintiff used as their **expert testimony** also shown later throughout this document, from a fire investigator with the (BFRS) Birmingham Fire and Rescue Service not to mention an employee from the BFRS) turned over a report to the ATF Jefferson County/Birmingham Division, in hopes for some type of criminal action to be pursued against the defendant, but the Agent on the case seen no reason to pursue charges against the Defendant being that she was the victim of a unfortunate crime that lead to the discovery of a firearm in in home.

# **EXHIBITS**

**EXHIBIT A:** Are some of the responses/answers from the Plaintiff's, that the Defendant received from their Discovery Requests. In the Plaintiff's response for INTERROGATORIES No. 9: the Plaintiff's claims they nor anyone acting on their behalf never made an untrue statement or false submissions to the Court. **But those answers were untrue as you would see throughout a hand full of the following Exhibits.**

Also in their response to INTERROGATORIES No. 14-17: Are the many Representatives from multiple companies acting on behalf of the Plaintiff, in which the Defendant had to go through, some of which whom made their own assumptions and false statements against the Defendant maliciously. **Also will be seen with some of the following Exhibits.**

**EXHIBIT B:** Shows an untrue statement in the Plaintiff's Complaint, stating the Defendant requested the $91,000 Dwelling and 36,4000 Personal Property Policy, when the next Exhibit shows otherwise.

**EXHIBIT C:** Shows in January 20, 2016 the Plaintiff's or someone acting on their behalf made changes to the Policies themselves.

**EXHIBIT D.** **Document #122** Shows the Plaintiff still blaming the Defendant for the request amount on the new Policy. **Which is untrue**

But then in **Document #127** Now shows the Plaintiff taken accountability into changing and upgrading the policy themselves.

**EXHIBIT E:** Is a **January 2016** copy of the Plaintiff's Expert Witness Report that had many inconsistencies and untrue statements within it written by a Fitzgerald Mosley in which was later amended by Mr. Mosley with the correct and updated information stating Ms Terry is not a suspect.

**EXHIBIT F:**   **Update Fire Investigation Report** as of **10/17/17**

**EXHIBIT G:**   Shows a January 28,2016 Police Report that doesn't make sense at all, the Office Donahoo, time frame of when he say he arrived to the home doesn't match the Fire Investigators report because the Fire investigators report claims they were at the scene at 00:45., and also **(see)** the Fire Investigators listed "no witnesses" at the scene.

**EXHIBIT H:**  Shows the lead Detective on the Arson and Burglar of the Defendant home, she has no knowledge or played a part in the offense.

**EXHIBIT I:**   Shows Part of some reports by the Plaintiff's hired Claim service Hal of (McDonald Claim Service) with some facts, opinions, assumptions and untrue statements, but it was Paragraph 4: that caught my attention "*At this time there is no evidence that Ms. Terry was involved in the fire*". Then turn around in another report, and make up an unfounded accusations stating " *At this time they believe the fire was set. They also believe that the insured may have been involved with hiring Jamie Moore to set the fire.*" **Not once did they state who or what agency/authorities gave them that statement.**

**EXHIBIT J:**   Shows another investigator acting on behalf of the Plaintiff, with his facts, opinions, assumptions and untrue statements, but it was Paragraph 4: the last sentence that caught my attention yet again stating *"At this Juncture, there is nothing to suggest that the claimant was involved with the incident."*

**EXHIBIT K:**   **Are 3 Different time lighter fluid bottle were mentioned, in 3 different investigation before the Plaintiff filed there June 2016 Complaint, but never mention it throughout the entire Complaint.**

**EXHIBIT L:**   Is a document the Defendant hand delivered and Fax to the Plaintiff's in regards of how unease and disrespected she felt at her first Examination Under Oath with Roderick K. Nelson: **The fact is he lied to the Plaintiff or someone acting on their behalf multiple of time against the Defendants and also**

**lied to her on multiple occasions as her recordings will show that has Roderick Name by the that was produced to the Court November/December 2017.**

**EXHIBIT M:** Shows Sherard speaking with a Jeff Starnes, with Sherard giving Mr. Starnes his answer as he was questioned. Jeff Starnes Claimed he was recording the conversation and was giving the statements to Spain & Gillon/Axis. MR. Starnes also stated to the Defendant that he was sending off Sherard statement (see Jeff Starnes) May 2016 recording between Defendant and Jeff Starnes. Also attached to Exhibit M is a page from Document 35 filed by the Defendant, with her and her brother Sherard Terry predicting how the Plaintiff's and their Counsel was/has been treating Sherard throughout this litigation. Sherard Terry has filed why he wrote those letters, **because they started with him first. Also see Document 115**

## Last but not least the on going battle with the Plaintiff's Recordings

**EXHIBIT N:** Noted again: Document #122: Paragraph 5 stating "*After making an inquiry with Axis Insurance Company, Counsel for the Plaintiff has learned that no recording are in Axis Insurance Company's possession AND NO SUCH RECORDING ARE KNOWN TO EXIST.*  Well that's odd because in the next Exhibit it shows AXIS very well known about two recordings in **March 2016**

**EXHIBIT O:** Proof AXIS knew about the recordings seeing that The AXIS employees was billed for them.

**EXHIBIT P:** Shows the Plaintiff's Counsel playing around with frivolous recordings Walter F. McArdle made of his own and tried to pass them off to the Defendant in which was very unethical of himself.

**EXHIBIT Q:** Shows the Plaintiff and their Counsel acting as if they just found out about the recording, when in fact **EXHIBIT O** shows otherwise.

## **CONCLUSION**

There are countless of more Exhibits the Defendant can show of how the Plaintiff's with the help of their Counsel has been misleading the Court throughout this litigation some of which the Court is aware of that has this case all over the place.  As a matter of fact the Plaintiff never had a case at all they wanted to based their case of the Defendant and her witnesses characteristics with the stress and emotion that they caused the Defendant and others trying to defend herself throughout this claim and litigation, and the Plaintiff's ran with that.

WHEREFORE, PREMISES CONSIDERED, SHARANDA L. TERRY prays the Court will grant the following relief:

      I.     Declare the (RCV) insurance policy contract to be paid in full;

      II.    Declare that AXIS has an duty and obligation to honor Terry for the claim submitted;

      III.   Declare coverage was/is found under the AXIS "RCV" insurance policy for the claim Terry submitted;

      IV.   Grant any punitive damages if seen as needed

      V.    Order such other, further or different relief as the law requires and to which Shararda L. Terry/Defendant may be entitled.

Respectfully submitted

s/ *Shararda L. Terry*
Shararda L. Terry
112 Greenspring ave sw
Birmingham, Al 35211
(Pro Se)
Ph(850)252-2597

## CERTIFICATE OF SERVICE

I hereby certify that I have April 6, 2018 served a copy of the foregoing upon all counsel of record in this case by filing a copy of same via the Court's CM/EFC system, and via hand delivered to:

Roderick K. Nelson
Walter F. McArdle
Thomas S. Hiley
**Spain & Gillon, L.L.C.**
The Zinszer Building
2117 Second Avenue North
Birmingham, Al 35203