FILED
2018 May-17 PM 08:41
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **AXIS INSURANCE COMPANY** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 2:16-cv-01021-JHE** |
| | ) | |
| **SHARANDA L. TERRY** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO
## MOTION FOR SUMMARY JUDGMENT

Comes now the Plaintiff AXIS Insurance Company (hereinafter "AXIS" or "Plaintiff") and replies to the Defendant's response to Plaintiff's Motion for Summary Judgment filed herein on May 3, 2018 as follows:

## II.   INTRODUCTION

On May 3, 2018, the Defendant, Sharanda Terry ("Defendant" or "Terry") filed her "Motion to Oppose, Dispute and Respond to Plaintiff [sic] Motion for Summary Judgment" (the "Response" or "Defendant's Response"). The Response does not really dispute any of the relevant or material facts asserted by the Plaintiff. The Response is mostly a baseless attack on every witness who has presented evidence or made arguments against Sharanda Terry's position in this

1

case. Her primary focus is on Lt. Fitzgerald Moseley (now Captain Moseley), who she has basically accused of fraud, collusion and misrepresentation of facts without submitting any evidence. Also without any evidence whatsoever and despite the overwhelming and indisputable proof to the contrary, Terry continues to claim that Moseley is somehow related to Jamie Moore. According to Terry, this is allegedly Moseley's purported motive for defrauding her to prevent her from having her insurance claim allowed and paid under the insurance policy. Of course, this does not make sense, is not supported by any evidence and Terry's accusations and claims are baseless and are misrepresentations of material fact.

Every other witness or lawyer who has taken a position against Terry has been attacked as a fraud, liar, racist or unethical. She continues to attempt to create diversions and distractions, through red herrings, other fallacious arguments and baseless accusations. The Response also shows, however, that the essential facts necessary to establish the Plaintiff's claim and right to summary judgment are undisputed.

## II. THE UNDISPUTED MATERIAL FACTS

### A.    The Undisputed Material Facts Supporting the Arson Claim.

The elements of arson can be established when the insurer introduces evidence that proves: (1) arson by someone; (2) motive by the insured; and (3)

unexplained surrounding circumstantial evidence implicating the insured.  Bush v. Alabama Farm Bur. Mut. Cas. Ins., 576 So.2d 175 (Ala. 1991); Great Southwest Fire Ins. Co. v. Stone, 402 So.2d 899 (Ala. 1981).

Terry attaches a copy of the Motion for Summary Judgment to her Response and has numbered the paragraphs in the Motion for Summary Judgment and replied to them by her paragraph numbers.  (Doc. 176 and 177).  In Plaintiff's Motion for Summary Judgment, the paragraph Terry has numbered 10 (Doc 176 at 9) states:

> In his report, Lt. Moseley determined that the cause of the fire was "incendiary under suspicious circumstances and was caused by human intervention."  Exhibit 1 to Exhibit 3 – Deposition of Capt. Fitzgerald Moseley (12/21/17) at 4.  He located a five-gallon gas can in the kitchen and a bottle of charcoal lighter fluid in the bedroom.  Id. There was a .38 caliber revolver found with the handle taped.  Id. This was Ms. Terry's gun.  Later, on January 28, 2016, the fire was reported to Tim Parkman, Inc. ("TPI"), a third-party claims administrator for AXIS.  The fire was then reported to AXIS and AXIS began its investigation of the claim.  Exhibit 1 at 7-8.  (Doc. 172 at p. 7).

Terry agrees with the statements in Paragraph 10.  (Doc. 177 at 3).  Therefore, Terry agrees that the fire was started by arson. She has admitted it was arson and does not dispute this first element for civil arson.

The motive of the insured is money.  The Defendant saw an opportunity to increase a $10,500 investment to a $126,000 return.  In the paragraph from Plaintiff's Motion for Summary Judgment numbered 41 by Terry (Doc. 177 at 15

3

and Doc. 176 at 20) Plaintiff states:

> Ms. Terry reported to McDonald that her income was approximately $2,700.00 per month or $30,000 to $40,000 per year at the time he interviewed her. Ex. J to Ex. 1 at 2. She earned her income solely from her monogram business. In her EUO, Ms. Terry could not even guess initially what her income was from January 2015, through January 2016. She said, "That's still kind of sketchy to me because I probably worked like one or two days a week." Id. at 37. When pressed she testified that she made $25,000.00 during that period ("Let's stick with that number"… I really can't guess"). Id. at 37-38. Ms. Terry claims her monthly expenses vary month to month but total approximately $800.00 to $1,100.00 per month. Exhibit 2 at 187.

Terry was under oath and had a duty to answer truthfully under the law and to cooperate with AXIS Insurance Company under the insurance contract. After being questioned about her income on more than one occasion and giving essentially the same response each time, Terry now states in response to Paragraph 41: "The Defendant was basically guessing whenever she was asked about her income/income tax returns." (Doc. 177 at 15). However, she has testified more than once on this issue. She was required to testify truthfully and she admits she did not.

In response to the paragraph from Plaintiff's Motion for Summary Judgment Terry has numbered 42 (Doc. 177 at 15 and Doc. 176 at 21-22), Terry does not dispute the facts set forth in Paragraph 42 (Doc. 172 at 19-20), including her claim that she had over $200,000 confiscated from her by law enforcement and all but $10,000 of that money was returned. (Doc. 172 at 19). Where does a person who

4

earns no more than approximately $18,500 per year come up with $200,000 to be carried around in her car or on her person? This was money that was obviously not reported on her tax returns.

Terry fabricated her testimony about her income to justify her insurance claim for tens of thousands of dollars in allegedly destroyed or stolen real and personal property. This is apparently her rebuttal to AXIS's argument that she could not afford to purchase all of the property she claims to have lost.

In her response to the paragraph she has numbered 43 from AXIS Insurance Company's Motion for Summary Judgment, Terry agrees with the facts set forth in that paragraph. These "facts" include her claim that she allegedly had over $10,000 in a bag in the wall that was burned; she also allegedly spent over $300,000 to $400,000 on airplane flights, while reporting no more than $18,842 on her tax returns from 2013 through 2015. Terry claims to have a very successful business (Doc.172 at 20 and Doc. 177 at 44) and she claims that the confiscated money and money in the bag in the wall came from her business. However, she obviously did not report any of this income on her tax returns and it is not believable that she ever had that amount of money.

She has continuously claimed that she has a "highly successful business," but does not report anything on her tax returns that would allow her to save up $200,000.00 or more and have that much money available at any given time.

Terry's claims about her having hundreds of thousands of dollars to be confiscated by law enforcement or to be used to buy airplane tickets is not supported by any admissible evidence or any theory of logic.

Terry now claims that she did not want the house anymore after the fire. (Terry's Response- Doc. 177 at 16). However, she has made much of the fact throughout this litigation that she had lost her "family home." She also admits, despite previous denials, that she did contact Gary McDonald to request a letter stating that AXIS would pay her at least $30,000.00 in insurance proceeds, so that she could be eligible to purchase a house valued at over $77,000.00 not long after the fire (Doc. 172 at 20, Doc. 177 at 21 and Doc. 176 at 31). Plaintiff submits that not only did Defendant not want the house, but she also burned it to get money.

Terry also admits to receiving the $5,000.00 cash advance check and, instead of using that money to pay living expenses and other necessary expenses, she testified that she spent some of that money in New Orleans and lost the rest. She "went to New Orleans on vacation and . . . spent all [the money] because [she] partied like it was 1999." (Doc. 172 at 30, Doc. 177 at 21 and Doc. 176 at 33). Terry went on a spending spree and is not the "poor" person she sometimes claims to be in her response, a claim she herself has repeatedly contradicted. Wherever her money and income comes from, if she does actually make as much money as she claims in her testimony, she does not report that on her tax returns and has

6

provided no proof that she ever earned or had this much money. According to her own testimony, she accumulates money by hiding it in places other than banks and spends frivolously. Terry saw an opportunity to obtain a return from her investment of $10,500.00 in an amount equal to approximately 12 times that number. Terry had a motive to burn the subject property for insurance and that motive was greed.

Terry continues to fail to explain the highly unusual factual circumstances implicating her in the loss. These highly unusual circumstances include the arson, the alleged burglary, and her strange alibi. Her story concerning Jamie Moore and Iesha Mayhand, and their alleged involvement in the arson and the purported burglary and their subsequent murders is bizarre, to say the least. The alleged burglary helps her fabricate losses and allows her to claim that property that she never owned or never existed was actually stolen in the burglary or lost in the fire. She has never provided adequate proof or evidence of her alleged loss. The size of her claim for personal property is not believable and is further evidence of her attempt to defraud AXIS. Her fraudulent behavior voids the insurance policy.

As indicated in Plaintiff's Motion for Summary Judgment (Doc. 172 at 5-9), Terry has continuously changed her timeline. She now claims in her response to Plaintiff's Motion for Summary Judgment that she "made a mistake" as to her timeline. (Doc. 172, Id., Doc. 177 at 3 and Doc. 176 at 5-9). Terry's claim that she

made a mistake in regard to her timeline is yet another misrepresentation concerning the timeline. When she testified prior to filing her Response to Plaintiff's Motion for Summary Judgment as to the time when she left the house immediately before the fire, her departure from the subject property became earlier and earlier each time she testified. She had to change her story more than once as she realized that she had to place herself as far away from the subject property as she could, both physically and temporally, in order to maintain her story that she was not near the house when it caught on fire.   Suddenly, she is "mistaken" as to the timeline. Therefore, she cannot now refute the fact that she had an opportunity to start the fire at the subject property or be involved in the arson.

There are multiple other incidents that Terry does not explain. She has also delivered a not so veiled threat to Plaintiff's counsel that people making accusations of murder "can get someone killed." (Doc. 177 at 13). Her brother has intimidated and threatened Roderick Nelson, one of Plaintiff's attorneys. (Doc. 172 at 34-35). She has harassed and initimidated Lt. Moseley and Detective Canino and interfered with their investigations.   She has claimed that she did not know anything about the gas can that was left in the house but admitted that the .38 caliber revolver that was found was actually hers. However, her brother, Sherard Terry, has testified that the gas can found in the house was his and that he told the Defendant this. (Exhibit 5 to Plaintiff's Motion for Summary Judgment- Doc. 171-

1 at 160 and 163-164). Nonetheless she has repeatedly testified and claimed that she knew nothing about the gas can found in the subject property after the fire.

Terry has completely and totally failed to explain the circumstances surrounding what she admits was arson. She has not really refuted any of the material evidence supporting a claim for arson. She has not only failed to explain the surrounding circumstantial evidence implicating her, she has also misrepresented material facts throughout the investigation of the case and has never explained anything relating to the arson that would assist in an investigation. She blames everything on a dead man and his murdered girlfriend and claims everyone else is lying. Plaintiff submits that it has established arson, motive and a failure to explain the surrounding circumstantial evidence implicating the insured. Therefore, AXIS submits that it is entitled to summary judgment on its claim of arson.

## III.   FAILURE TO COOPERATE WITH THE INVESTIGATION

The conditions for coverage include certain duties after a loss. These include the duty to cooperate in the investigation of the claim. Alabama law recognizes the contractual duty of an insured to make a full, fair and complete disclosure of the facts related to the incident in order to enable the insurance company to determine whether the claim should be contested. Metropolitan Cas. Ins. Co. v. Blue, 219 Ala. 37 121, So. 25 (1929); Yorkshire Indem. Co. v. Roosth & Genecov Prod. Co.,

252 F. 2d 650 (5th Cir. 1958); <u>United States Fire Ins. Co. v. Watts</u>, 370 F. 2d 405 (5th Cir. 1966); <u>Alabama Farm Bur. Mut. Cas. Ins. Co. v. Mills</u>, 271 Ala. 192, 123 So. 2d 138 (1960); <u>Alabama Farm Bur. Mut. Cas. Ins. Co. v. Teague</u>, 269 Ala. 53, 110 So. 2d 290 (1959).

Terry has failed to cooperate throughout the investigation. She admittedly has failed to disclose the names of numerous people who might have information. She has repeatedly changed her story concerning when she left the property immediately before the fire and, in her Response to Motion for Summary Judgment, changed it again. She has continued to refuse to answer questions and provide information during the course of the investigation and this litigation. Indeed, she has been cited for spoliation of evidence by this Court.

She admits that she has not cooperated, but she claims it is because she claims she fears for her life. However, she has not explained why she would or should fear for her life. The alleged threat, the person who allegedly burned her house down, has been murdered and she has not reported any threats from any other person since the fire and has complained of none in her response. In any event, the fact that Terry deals with violent and dangerous people does not create an exception to her duty to cooperate under the contract of insurance. She has admittedly failed to cooperate. Her failure to cooperate has caused AXIS substantial harm and damage from the costs involved in investigating and litigating

over her claim. (Exhibit 6 to AXIS's Response to Terry's Motion for Summary Judgment (Doc. 174-1at 4-5)).

Her failure to disclose identities and contact information, her continuous changing of her story as well as her spoliation of evidence during the course of these proceedings, among many other things, clearly show a failure to cooperate in the investigation. She has repeatedly admitted she has failed to cooperate. Her failure to cooperate voids the insurance contract. Therefore, AXIS Insurance Company is also entitled to summary judgment based on Terry's failure to cooperate in the investigation of her claim.

## IV. FAILURE TO PROPERLY SUPPORT MOTION FOR SUMMARY JUDGMENT

The Defendant has failed to properly support her response to the Motion for Summary Judgment. The "facts" she asserts are not supported by admissible evidence. Fed.R.Civ.P. 56(c)(1) and (2). She has not supported her Response with affidavits or other admissible evidence setting forth material or relevant evidence. Indeed, most of her factual assertions are conclusions or accusations and are not facts at all. The purported evidence that she does submit is inadmissible hearsay, unauthenticated, or not properly identified. She has submitted incomplete exhibits and has drawn, or written inadmissible statements all over them. Her Response is filled with hearsay and conclusions and not actual facts. The Defendant has failed to properly address the facts in Plaintiff's Motion for Summary Judgment and

11

summary judgment should be granted to the Plaintiff.

## V. ADDITIONAL ARGUMENTS AND EVIDENCE

Plaintiff adopts and incorporates herein by reference the Amended Motion for Summary Judgment filed by AXIS (Doc. 172) and all exhibits thereto (Doc. 161 through Doc. 171). AXIS also adopts and incorporates herein by reference all of the arguments and evidence submitted in response to Terry's Motion for Summary Judgment. (Doc. 174; and Doc. 174-1, et seq.).

## VI. CONCLUSION

Due to Terry's failure to properly support her response to the motion for summary judgment, her failure to address the relevant and material facts set forth in the motion for summary judgment and the fact that the undisputed facts in this case support a case for arson and AXIS's claim that Terry has not cooperated in the investigation of her claim all require that summary judgment be granted in this case. There are no disputed issues as to any material fact and the Plaintiff is entitled to a judgment as a matter of law.

WHEREFORE, PREMISES CONSIDERED, Plaintiff moves this Court for the entry of an order granting it summary judgment and ruling that Terry's claim for insurance is not due to be paid by AXIS, because the insurance contract has been voided due to her failure to cooperate in the investigation, her fraud and due

to the fact that she has committed civil arson.

Submitted this the 17th day of May, 2018.

                                      Respectfully submitted,

                                      s/ Walter F. McArdle
                                      Walter F. McArdle (ASB-2446-r69w)
                                      Roderick K. Nelson (ASB-8004-n69r)
                                      Attorneys for Plaintiff,
                                      AXIS Insurance Company

**OF COUNSEL:**
**SPAIN & GILLON, L.L.C.**
The Zinszer Building
2117 Second Avenue North
Birmingham, Alabama 35203
Ph:   (205) 328-4100
Fax:  (205) 324-8866
email: wfm@spain-gillon.com
email:rkn@spain-gillon.com

## CERTIFICATE OF SERVICE

I hereby certify that I have on May 17, 2018 served a copy of the foregoing upon Defendant in this cause by filing a copy of same via the Court's CM/ECF system and serving a copy upon the Defendant via e-mail:

Sharanda Terry
112 Green Springs Avenue SW
Birmingham, AL 35211
email: sharandasexquisite1@gmail.com

                                      s/ Walter F. McArdle
                                      Of Counsel